## SEARLS *v.* WORDEN.[*]

(*Circuit Court, E. D. Michigan.* 1882.)

1. CONTEMPT—PENALTY.

It *seems* that in fixing a penalty for contempt in the violation of a temporary injunction in a patent case, the court may ascertain the amount of defendant's profits, together with complainant's costs and expenses, and impose the aggregate sum by way of fine, and direct the same to be paid over to the complainant in reimbursement of his damages.

2. SAME—A CRIMINAL OFFENSE.

But as such contempt is a criminal offense, the fine should bear a just proportion to the magnitude of the offense, and ought not in general to exceed such amount as would ordinarily be imposed as a fine, when paid over to the government.

In Equity.

*J. P. Fitch,* for complainant.

*Sprague & Hunt,* for defendant.

BROWN, D. J. This is an application to fix a penalty for contempt in selling 62 gross of whip-sockets in violation of an injunction against the sale of such sockets, which had been adjudged to be an

---

[*] Reversed. See 7 Sup. Ct. Rep. 814.

infringement of complainant's patent. The sockets were sold in bulk to one Havens, upon the day the injunction was issued, and Havens thereafter disposed of them in small lots, received the money therefor, and paid it over to the defendant. This sale to Havens was, under the circumstances, adjudged by this court to be merely a subterfuge, the defendant Worden was adjudged guilty of contempt, and the case was referred to a master to compute the amount of profit realized by the defendant, together with complainant's costs and expenses. The question now arises as to the amount of fine to be imposed, and its distribution. The main question is whether the fine ought to be assessed at a gross sum, in the nature of a penalty, to be paid over to the government, as in an ordinary criminal proceeding, or whether it may be determined by the amount of profit realized by the defendant, and the costs and expenses incurred by the complainant, and the aggregate ordered to be paid over to the complainant in reimbursement of his damages. If the question were to be determined at all by the laws of this state, there could be no doubt of our power to indemnify the complainant in this manner, since the Compiled Laws, § 5709, provide that "if an actual loss or injury has been produced to any party by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him, and to satisfy his costs and expenses, instead of imposing a fine upon such defendant." This section is copied from a similar New York statute, and the practice has been enforced in several cases in that state. *People* v. *Spaulding*, 2 Paige, 326 ; *People* v. *Bennett*, 4 Paige, 282; *People* v. *Davis*, 15 Wend. 602. It is unnecessary to say that this statute has no application to cases in the federal courts, nor is there anything in the English or American books upon equity practice which seems to justify an order of this kind, although damages are frequently allowed to a *defendant* upon a dissolution. High, Inj. c. 21. But I notice that in several cases the federal courts have adopted an analogous practice, and imposed a fine equivalent to the profits made by the defendants, and the costs and expenses of complainant, and directed the same to be paid over to the latter by way of reimbursement. *In re Mullee*, 7 Blatchf. 23 ; *Doubleday* v. *Sherman*, 8 Blatchf. 45.

The validity of this practice is not discussed in these cases, and, without expressing any opinion of my own, I am disposed, with some hesitation, to follow them until corrected by a higher court. In this class of cases it is certainly consonant with justice. This renders it

necessary to ascertain the amount of profits realized by the defendant, and the amount of complainant's costs and expenses.

The cost of these whip-sockets seems to have been $15 per gross, or $930 for 62 gross. They were sold at $30 per gross by Havens, but he seems to have been bound to account for them to this defendant only at the rate of $26 per gross. I am disposed, to allow the four dollars per gross as commission on the sales, although I have already had occasion to express my opinion that the sale to Havens was itself a subterfuge. Estimating the 62 gross at $26 per gross, and deducting the cost, we find a profit of $682. Complainant also proved expenses by items to the amount of about $500, besides counsel fees, which are charged at $1,000. The expenses, I think, should be allowed. I am not disposed, however, to impose upon the defendants the burden of paying the fees of complainant's counsel, brought here from a distance, to press this motion. I was at first disposed to allow a portion of this charge, but upon reflection it has seemed to me that as this was a criminal proceeding, (*New Orleans* v. *Steam-ship Co.* 20 Wall. 387, 392,) and probably not reviewable by the supreme court, (*Hayes* v. *Fisher*, 102 U. S. 121,) the punishment should bear some just proportion to the magnitude of the offense, and ought not in general to exceed the sum which would ordinarily be imposed by way of fine; although, if these statutes applied, there would seem to be no discretion. If, for instance, the master had reported defendant's profits at only five dollars, the imposition of a fine of $1,500, for expenses and counsel fees, would seem not only an unwarrantable encouragement of proceedings of this nature, but a possible infraction of the constitutional provision against cruel and unusual punishments.

The aggregate of the other items is $1,182, which is imposed as a fine upon the defendant for the violation of this injunction; and it is ordered that he be committed to the custody of the marshal until this fine be paid, and that the amount of such fine, when collected, be paid over to the complainant in satisfaction of his damages.

See *In re Cary*, 10 FED. RER. 622, and note, 629.